RECEIVED
SDNY PRO SE OFFICE
2022 JUN 13  PM 12: 58

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEWYORK

| | |
|---|---|
| **DANTE HYNDMAN** | ) |
| Plaintiff | ) |
| | ) |
| **V.** | ) |
| | ) |
| | ) |
| | ) |
| **SMALL BUSINESS ADMINASTRATION** | ) |
| **ISABEL GUZMAN,** in her official | ) |
| capacity as Administrator of the Small | ) |
| Business Administration; | ) |
| **JANET YELLEN,** in her official | ) |
| capacity as Secretary of the Treasury; and | ) |
| **THE UNITED STATES OF AMERICA** | ) |

Plaintiff Dante Hyndman submit this Complaint for Declaratory Judgment and request for Temporary, Preliminary, and Permanent Injunctive Relief to invalid the SBA, decision to deny Plaintiff an EIDL Loan as described in the CARES Act, for 'unverifiable information' based upon a finding and conclusion the SBA had no authority to find or conclude. The challenged portion of SBA's Final Decision purport to make Plaintiff ineligible for the CARES Act, EIDL Loan. EIDL Loans under the CARES Act in contravention of the unambiguous statutory text and limited authority that Congress delegated to the SBA. In support of this request, Plaintiff claims and states as follows:

## INTRODUCTORY STATEMENT

1.    The outbreak of COVID-19 and the government's response to that virus have decimated the American economy. To help mitigate the economic damage and keep small businesses afloat during these unprecedented times, the United States Congress passed the Coronavirus Aid, Relief

and the Economic Security Act ("CARES Act") and the EIDL Program. Congress tasked the Small Business Administration ("SBA") with promulgating regulations to administer EIDL loans to any business concern based in the United States, so long as the small business was in operation by February 15, 2020.

2.      Plaintiff owns such business: Dante Hyndman of which is principally located 738 Pelhamdale avenue, New Rochelle, NY, 10801. But the SBA has refused to uphold its statutory duty to make EIDL loans available to Plaintiff. With no delegation of authority to do so, the SBA took it upon itself to exclude Plaintiff. Nevertheless, the SBA has applied its facially invalid reason to indiscriminately exclude Plaintiff from EIDL loans that Congress made available to all small businesses

## JURISDICTION AND VENUE

3.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1346, 1361, and 2201. Additionally, this Court has jurisdiction to review agency action under 5 U.S.C. § 702, which provides, in part: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." And pursuant to 15 U.S.C. § 634(b), jurisdiction is conferred upon any United States District Court to determine controversies against the Administrator of SBA. This Court has jurisdiction to grant injunctive relief pursuant to 28 U.S.C. § 2202 and Rule 65 of the Federal Rules of Civil Procedure. Venue is proper in the District of Saint Louis, Missouri, pursuant to 28 U.S.C. § 1391, as the events giving rise to the Plaintiff causes of action arose or exist in this District.

## PARTIES

4.      Plaintiff is a resident and business owner located at 738 Pelhamdale Avenue, New Rochelle, NY, 10801. Plaintiff has a consulting business.

5.      Defendant SBA is a federal agency created and authorized pursuant to 15 U.S.C. § 633 et seq. SBA maintains a local office in 26 Federal Plaza Suite 3100, New York, NY.

6.      Defendant Isabell Guzman is the Administrator of SBA (the "Administrator"), a Cabinet-level position. She is sued in her official capacity. The Administrator may be sued pursuant to 15U.S.C. § 634(b) ("In the performance of, and with respect to, the functions, powers, and duties vested in [her] by this chapter the Administrator may ... sue and be sued ... in any United States district court[.]").

7.      Defendant Janet Yallen (the "Secretary") is the Secretary of the United States Department of the Treasury ("Treasury"). She is sued in his official capacity.

8.      Defendant the United States of America is a sovereign nation dedicated to protecting life, liberty, and property, as provided for in the U.S. Constitution.

## STATEMENT OF FACT

9.      Section 7(b)(2) of the Small Business Act authorizes SBA to make EIDL loans to eligible small businesses and nonprofit organizations located in a disaster area. 15 U.S.C. 636(b)(2). On March 6, 2020, Congress deemed COVID-19 to be a disaster in Title II of the Coronavirus Preparedness and Response Supplemental Appropriations Act of 2020, Public Law 116-123, 134 Stat. 146, 147, allowing SBA to declare disasters and make EIDL loans available to small businesses and nonprofit organizations suffering substantial economic injury as a result of the COVID-19 pandemic. The Coronavirus Aid, Relief, and Economic Security Act (CARES Act) Public Law 116-136, expanded eligibility and waived certain rules and requirements for COVID EIDL loans. Section 1110 of the CARES Act permitted SBA to waive rules related to personal guarantees on COVID EIDL loans of not more than $200,000 and the requirement that an applicant be unable to obtain credit elsewhere. Section 1110 also provided SBA with the

authority to approve an applicant based solely on the credit score of the applicant or use alternative appropriate methods to determine an applicant's ability to repay.

10.      As a direct and proximate cause of COVID-19 and economic downturn, Plaintiff business was negatively impacted and suffered substantial economic injury. In order to mitigate the negative impact and stabilize Plaintiff business, On April 8th, 2020 Plaintiff applied for an EIDL loan that was offered to businesses at a 3.75% interest rate fixed for 30 years with the first payment starting 2 years after the date received.

11.      On or about March 14th 2020 Plaintiff used the IRS non-filer to update banking info with the IRS to receive stimulus payments.

12.      On April 01st 2020 Plaintiff applied for an EIDL Loan, shortly afterward Plaintiff was denied June 13th 2020. "**Denied due to economic injury not substantiated**"

13.      Shortly after, due to Plaintiff having Covid-19 symptoms, quarantining with family members and government orders shutting down Plaintiff city, Plaintiff was unable to amend his non-filer federal tax return until July 1st 2021, 12 months from the due date July 15, 2020. In addition, Plaintiff also filed Plaintiff 2020 tax return at the same time as amending 2019 non-filer return.

14.      Plaintiff reapplied 12 times throughout 2020 and 2021 and denied again on August 19th 2021. "**The applicant business is not eligible because there are significant discrepancies between the information you provided in your application and the information we received from the IRS.**" Plaintiff informed the SBA customer service representatives that Plaintiff 2019 amended return wasn't processed at IRS and to wait before ordering transcripts. The SBA still ordered plaintiff transcripts which led to the decline dated August 19th 2021,

15.      Defendant, SBA, informed Plaintiff that in order to go through reconsideration again, an appeal request must be submitted. The appeal request was submitted and confirmed one week later.

16.      On November 5th 2021 the IRS had fully processed Plaintiff tax return.

17.     On November 14th 2021 Paintiff was assigned a congressional loan specialist via congressional inquiry.

18.     On December 14th 2021, Plaintiff was denied again on appeal. This decline was done by an inexperienced 24-year-old loan specialist that prior to becoming a loan specialist for the SBA, was newly out of college, graduating from health and science and immediately became an Covid-19 loan specialist for the SBA giving the power to decline and approve applications. The loan specialist declined reason "**identified discrepancies with other applications submitted, no tax transcripts for other businesses on applications submitted by Plaintiff. Plaintiff submitted multiple applications under his own name and doesn't have other businesses. Multiple applications were submitted, in error, but for the same business only the original application can be processed and because of multiple applications not having transcripts, the file was declined.**

19.     Upon information and belief, Defendant never processed the original application which had all necessary documents and didn't need other applications to be considered.

20.     Plaintiff then requested to speak with the loan specialist, supervisor, and as a result, was appointed a new loan officer as stated in appeals decline letter dated December 14th 2021.

21.     Plaintiff contacted the local congressional district director and manager of the local SBA office about the matter. The local SBA office manager sent out an email on behalf of the Plaintiff regarding the appeal application being wrongfully declined. The congressional loan specialist assigned to the Plaintiff was also notified but unresponsive.

22.     December 21st 2021, Plaintiff's portal updated to reflect required documents; 2019 bank statements, 2019 tax return, social security card, 4506 T, P-022 Standard Resolution.   All documents besides the social security card were previously uploaded, but I immediately uploaded the documents again.

23.     For the first time since receiving Plaintiff tax transcripts from the IRS on November 23rd 2021, plPintiff inquired about the SBA, requesting documents already provided and how Plaintiff file was declined by a loan specialist who hasn't worked at the SBA until after the Plaintiff applied for a loan.

24.     The congressional loan specialist informed the Plaintiff that a request for "legal review" was submitted. Plaintiff asked about this process and was told by the congressional loan specialist that it is a process that consists of multiple loan specialists of various ranks who review a file for discrepancies.

25.     February 9th 2022, Congressional Loan specialist informed Plaintiff that the legal review team has identified multiple discrepancies with his file. **"These discrepancies included , taxes appear to be filed only to obtain loan, amended tax return was filed 07/2021 after SBA declined application, 2018 tax return was not filed, no evidence business was operational prior to disaster date, the bank statement welcome letter verifies that the applicant did not open a business account until 2021, borrower submitted 12 applications, all vary in information and seem to be for different businesses, applicant is using 7 different bank accounts throughout the application, and applicant's explanation for duplicate applications is insufficient."**

26.     Plaintiff explained to the congressional loan specialist and drafted letters explaining that all applications were submitted for one business, but only the original application needed to be processed and multi bank account info was giving to the SBA so the SBA could update Plaintiff bank account from the one Plaintiff gave in the original application.

27.     Plaintiff highlighted, explaining that all required documents were provided and that the

discrepancies were all discretionary which could have been explained if requested, but were not valid reasons to decline a file.

28.     All documents provided were legitimate and the SBA already had full tax transcripts from the IRS.

29.     Upon information and belief, the SBA dragged Plaintiff files through a fake legal review process that was kept secret until 2022.

30.     Plaintiff highlights disorganization by the SBA through calling loan specialists, loan officers, and using a various network of loan specialists who all work together or are supervisors of each other all with the common goal of deflecting and distracting applicants.

31.     Plaintiff spent 6 weeks going back and forth with congressional loan specialist, her supervisor, and the SBA about the file being flagged for fraud and having an agency hold for "discretionary reasons" despite all required documents sitting there in the portal since November 23rd 2021. Plaintiff was constantly asked to give new explanations every week for how his business operated, how he makes income, why he filed with the non-filers tool and then amended, why he opened a business bank account in August 2021, and all the other discrepancies on his file.

32.     March 10th 2022, Plaintiff called, the SBA, customer service to finds out who his loan officer is and confirm this information with the SBA PDC reconsideration operator. Plaintiff emails and calls the loan officer for a week and was ignored every single time. One week later, Plaintiff called the SBA, PDC department to request the supervisor of the loan officer due to the loan officer refusing to work on Plaintiff file. The PDC operator calls the supervisor of the loan officer, and before the voicemail recoding could finish saying the supervisor was unavailable the loan officer emails Plaintiff stating that he is no longer the loan officer on his file and suggests to Plaintiff to contact customer service.

33.     The Plaintiff immediately responds to the loan officer's email informing him that he already did that and confirmed with the PDC department that he is already aware and confirmed with the SBA customer service and the PDC department, multiple representatives from each

department, that the information is correct. The loan officer finally admits to his and confesses that he is no longer on the file which was also false.

34.     March 29th 2022, the SBA hold was lifted off the file and Plaintiff's congressional loan specialists' team lead added notes to Plaintiff file highlighting his amended returns.

35.     April 1st 2022, Plaintiff completes the legal review process and is informed by his congressional loan specialist about the next part of the process, which is waiting on the congressional high priority team. Plaintiff asks why he was denied by a loan specialist who has the same rank as his congressional loan specialist and why he must wait for congressional high priority when the supervisor of the congressional loan specialist is also on the high priority team. Plaintiff assumes that his loan specialist and her supervisor could approve his file but keep passing the file off to others.

36.     April 9th, 2022 the SBA, requested partial transcripts from IRS. Plaintiff immediately informs defendant and his congressional loan specialist that the full transcripts is what the defendant needs, not the partial transcripts, and the full transcripts were already received twice; November 3rd 2021 and January 8th 2021.

37.     April 11th 2022, the hold stipulation on Plaintiff's file was cleared and the SBA sent Plaintiff file for final reconsideration.

38.     April 13th 2022, Plaintiff called the Team lead for the of the congressional loan specialist, to confirm that SBA has all necessary documents including his amended tax transcripts from IRS. The team lead confirms everything is ready to go and the file is waiting on congressional high priority, which is the same department the team lead is in.

39.     April 28th 2022, loan specialist Patrick Murphy denied Plaintiff appeal, stating **"that Plaintiff will not get a second appeal due to late filing of taxes"** despite Plaintiff completing the legal review process on April 1st and rectifying that same discrepancy.

40.     May 5th, the SBA announces that the EIDL program is ending, and all portals will go down on May 16th 2022.

41.     Shortly after the SBA announced that all funds are out and that only applicants who are obligated will be funded. Plaintiff calls the SBA, customer service to confirm his file is still in processing waiting on congressional high priority. Plaintiff was told yes.

42.     May 11th 2022, a representative from Office of Disaster Assistance named Michael Lipari placed the funding "on hold" for suspected EIDL fraud. Mr. Lipari states: **the Plaintiff file is on agency hold, loan officers and case managers should seek guidance prior to contacting borrowers, making decisions, or completing tasks by emailing PDC agency hold inquiries mailbox. Do not discuss agency hold details with customers. Internal inquiries only - mailbox is not intended for non-SBA employees.**" Mr. Lipari finally states that the Plaintiff filed his returns for purposes of the loan.

43.     The Plaintiff called a high priority specialist named Katherine Crane, who is the supervisor for Patrick Murphy, who flagged the file on April 28th, 2022, to ask her to investigate the file and see what could be done. Miss. Crane informs the Plaintiff that Mr. Lipari works for the legal review team. Plaintiff confirms that Mr. Lipari disregarded the consensus reached by the legal review department and, by his own admission, flagged the Plaintiff's file for something that was already resolved.

44.     Plaintiff contends that no matter what happens with a file, even if all documents are provided, all discrepancies are resolved through legal review, the SBA has an internal policy to deny at any means necessary and/or to delay a file any way possible until the SBA can shut the program down.

45.     Section 15 USC $9009 (d)(2) did not give the SBA the discretion to create additional "entity eligibility" criteria.

## COUNT I: SBA PROMULGATED AN INTERIM ELGIBILITY

46.     Plaintiff reallege and incorporate by reference the allegations contained in the Introductory Statement and paragraphs 1 through 45, as if fully set forth herein

47.     The plain reading of 15 USC §9009(d)(2)(A) or (B) does not support that if a 2019 tax return reported filed by the IRS in 2021 renders the applicant ineligible to participate in the EIDL program. On the contrary, the correct reading of this section is that Congress intends for the SBA to use information from the Department of the Treasury (IRS) to confirm and verify that financial information provided by the applicant is verifiable and accurate, and for the SBA to use the said information in making determinations about the applicant's eligibility for certain grants or specific loan amount, and not whether an applicant is eligible to participate in the EIDL program.

48.     Congress did not delegate any discretion to SBA to deem classes of small businesses ineligible for reasons not contained in the CARES Act.

46.     SBA's Unlawfully Denied EIDL Loan to the Plaintiff

47.     Plaintiff is fully qualified under the text of the CARES Act to receive a EIDL loan.

48.     Plaintiff intended and still intends to use the funds from an EIDL Loan in accordance with the provisions of the CARES Act.

## COUNT II: UNLAWFULLY WITHHELD AGENCY ACTION
## DEFENDANTS FAILED TO CARRY OUT A MINISTERIAL DUTY

49.     Plaintiff reallege and incorporate by reference the allegations contained in the Introductory Statement and paragraphs 1 through 48, as if fully set forth herein.

50.     The Administrative Procedure Act requires that a reviewing court "compel agency action unlawfully withheld or unreasonably delayed[.]" 5 U.S.C. § 706(1).

51.     Relief under § 706(1) "is like the mandamus remedy, 'empowering a court only to compel an agency to perform a ministerial or non-discretionary act or to take action upon a matter, without directing how it shall act.'" Vill. of Bald Head Island v. U.S. Army Corps of Engineers, 714 F.3d 186, 195 (4th Cir. 2013) (quoting Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004) (cleaned up)).

52.     The CARES Act directed SBA to administer EIDL Loans based on the considerations that Congress set out in the law.

53.     SBA's failure to administer EIDL Loan to Plaintiff when Plaintiff is eligible under the dictates of the CARES Act —is an unlawfully withheld agency action.

54.     Plaintiff is entitled to relief under 5 U.S.C. § 706(1) by way of ordering the Defendants to perform the nondiscretionary act of administering EIDL Loans according to the text of the CARES Act.

## COUNT III: INVALID AGENCYACTION CONTRAVENES THE PLAIN TEXT OF THE CARES ACT

55.     Plaintiff reallege and incorporate by reference the allegations contained in their Introductory Statement and paragraphs 1 through 54, as if fully set forth herein.

56.     A court reviewing an agency action "shall hold unlawful and set aside" any action "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

57.     The text of the CARES Act is clear and unambiguous as to which businesses are eligible for EIDL loans.

58.     Because the CARES Act was clear and unambiguous, SBA lacked authority to promulgate regulations that restricted or otherwise "clarified" which businesses are eligible for EIDL loans. The Act's specification that so long as the business was in "operation; prior to January 31st, 2020, is a reasonable interpretation that Plaintiff is eligible. CARES Act, Pub. L. No. 116-136, § 1110.

59.     Finally, by specifying 'any business,' ("[O]ne can find nothing in either the CARES Act or the Small Business Act to suggest that Congress wanted to exclude the Plaintiff from EIDL. … "[G]iven Congress's clear intent to extend EIDL loans to all small businesses affected by the pandemic that was in operation prior to January 31st, 2020 … it seems highly unlikely that Congress intended the SBA to apply its exclusion to EIDL.").

60.     Administrative agencies are not entitled to deference. Article III of the Constitution vests "the judicial power of the United States" in the courts and creates the judicial office held by "[t]he judges, both of the Supreme Court and inferior courts." U.S. CONST. art. III, § 1. The judicial power includes the authority to decide cases and controversies; a judge's office includes a duty to exercise independent judgment in the interpretation and application of law in each case. See Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177 (1803) ("It is emphatically the duty of the Judicial Department to say what the law is. Those who apply the rule to particular cases must, of necessity, expound and interpret that rule.").

61.     The judicial office requires judges to "exercise independent judgment in accord with the law." PHILIP HAMBURGER, IS ADMINISTRATIVE LAW UNLAWFUL? 173 (2014).

62.     Judicial deference to the agency's interpretation would display bias toward SBA, the government litigant in this case. See Marshall v. Jerrico, Inc., 446 U.S. 238, 242 (1980) (explaining that a neutral judiciary "safeguards the two central concerns of procedural due

process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decision-making process").

63.     The Plaintiff reading of the CARES Act is more consistent with Congress's purpose in providing for EIDL loans in that Congress made EIDL loans available to all business concerns that meet the considerations set out in the CARES Act, Pub. L. No. 116-136, § 1110.

64.     As a direct and proximate result, the Defendants and have caused Plaintiff and irreparable harm including but not limited to financial ruin and business ruination.

65.     The Plaintiff has been damaged and will continue to be damaged by Defendants' conduct.

66.     No adequate remedy at law is available that could compensate Plaintiff for their damages.

67.     The Plaintiff is entitled to declaratory and injunctive relief.

## COUNT IV: AGENCY ACTIONS AND DECISION IS ARBITRARY AND CAPRICIOUS

68.     Plaintiff reallege and incorporate by reference the allegations contained in their Introductory Statement and paragraphs 1 through 45, as if fully set forth herein.

69.     A court reviewing must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" Mayor & City Council of Baltimore v. Azar, No. CV RDB-19-1103, 2020 WL 1873947, at *3 (D. Md. Apr. 15, 2020) (quoting 5 U.S.C. § 706(2)(A)).

70.     An agency's action "is arbitrary and capricious if 'the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" J.O.P. v. U.S. Dep't of Homeland Sec., No. GJH-19-1944, 2020 WL

2932922, at *18 (D. Md. June 3, 2020) (quoting Sierra Club v. U.S. Dep't of the Interior, 899 F.3d 260, 293 (4th Cir. 2018)).

71.     "[A] court must "conduct a 'searching and careful' review to determine whether the agency's decision 'was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" Friends of Capital Crescent Trail v. U.S. Army Corps of Engineers, No. CV JKB 19-106, 2020 WL 1849704, at *5 (D. Md. Apr. 13, 2020) (quoting Sierra Club, 899 F.3d at 270).

72.     A facial review of CARES Act, Pub. L. No. 116-136, § 1110 proves that the SBA acted arbitrarily and capriciously. Congress did not intend for SBA "to exclude Plaintiff because the purpose of the EIDL Loan was to provide relief to all small businesses owners negatively impacted by the pandemic. The SBA failed to rely on the factors that Congress established. In doing so, SBA excluded Plaintiff businesses.

73.     The SBA completely disregarded the important problem that Congress tried to solve making favorable loans available to all small business's owners expeditiously in a time of national economic turmoil.

74.     Congress did not call on SBA's expertise; instead, Congress instructed SBA to administer EIDL loans based on the considerations enumerated in the CARES Act. SBA departed from the text of the law and, in doing so, failed entirely to consider the problem Congress sought to.

75.     As a direct and proximate result, the Defendants have caused Plaintiff irreparable harm including but not limited to financial ruin and business ruination.

76.     The Plaintiff has been damaged and will continue to be damaged by Defendants' conduct.

77.     No adequate remedy at law is available that could compensate Plaintiff for his damages.

78.     The Plaintiff is entitled to declaratory and injunctive relief invalidating the SBA actions.

## COUNT V: MANDAMUS THE INDIVIDUAL DEFENDANTS
## FAILED TO CARRY OUT A MINISTERIAL DUTY

79.     Plaintiff reallege and incorporate by reference the allegations contained in their Introductory Statement and paragraphs 1 through 78, as if fully set forth herein. The "ancient remedy" of mandamus will apply in extraordinary circumstances "to compel the fulfillment of a duty which is ministerial, plainly and positively ascertained, and free of doubt." Grice v. Colvin, 97 F. Supp. 3d 684, 705 (D. Md. 2015) (citations omitted).

80.     A writ of mandamus is proper when three elements are present: "(1) a clear right in the Plaintiff to the relief sought; (2) a clear duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available." Grice, 97 F. Supp. 3d at 705 (citation omitted).

81.     The second element is satisfied when the defendant's official action is ministerial or nondiscretionary. "A ministerial duty, the performance of which may, in proper cases, be required of the head of a department, by judicial process, is one in respect to which nothing is left to discretion. It is a simple, definite duty, arising under the conditions admitted or proved to exist, and imposed by City of Columbus v. Trump, No. CV-18-2364-DKC, 2020 WL 1820074, at *22 (D. Md. Apr. 10, 2020) (quoting Mississippi v. Johnson, 71 U.S. 475, 498 (1866)).

82.     One such ministerial duty is dispensing sums of money as directed by Congress. City of Columbus, 2020 WL 1820074, at *22 (citing Kendall v. U.S. ex rel. Stokes, 37 U.S. (12 Pet.) 524 (1838); Marbury, 5 U.S. (1 Cranch) 137).

83.     The equitable writ of mandamus is appropriate in this extraordinary circumstance because Congress directed SBA to administer EIDL Loans based on the criteria set forth in the CARES Act. The Plaintiff meets that criteria and is entitled to have his loan applications processed like all other applicants who meet the criteria that Congress set. There is no adequate

remedy at law by which the Plaintiff can compel the Defendants to carry out their statutorily imposed ministerial duty.

84.      The Plaintiff is entitled to mandamus relief ordering the Defendants to administer and process Plaintiff EIDL Loan applications as required by the plain terms of the CARES Act.

## PRAYER FOR RELIEF

*Wherefore*, Plaintiff pray for the following relief against Defendants:

A. Declaratory judgment that the SBA actions are contrary to the CARES Act.

B.  Declaratory judgment that the SBA actions, conclusions and decision is arbitrary and capricious.

C. Writs of mandamus ordering the individual Defendants to fulfill their duties to administer EIDL Loans to Plaintiff that are eligible under the criteria set out in the CARES Act.

D. Temporary Restraining Order and Preliminary and Permanent Injunction that would save the Plaintiff place in line for the first-come, first-served funds that Congress allotted for EIDL loans by enjoining the Defendants from dispensing $473,000 of the funds that the SBA qualified Plaintiff for (ex pg 'G' 1) and Congress allotted under the CARES Act on April 24, 2020, Pub. L. No. 116-139.

E.  Order the Defendants to restore Plaintiff to its place in queue as of the time Plaintiff application denied for the EIDL Loan.

F. For such other relief as the Court deems just and proper.

The forgoing is true to the best of my knowledge

Respectfully submitted,

Dante Hayndman
738 Pelhamdale avenue
New Rochelle, NY, 10801
914.215.2361
prose

Sworn before me this _____ day of _____, 2022

Notary                                    My Commission expires: 12/28/23

GIANCARLO LOUIS
Notary Public - State of New York
NO. 01LO6335132
Qualified in Richmond County
My Commission Expires Dec 28, 2023