UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DANTE HYNDMAN,

                      Plaintiff,

-against-

SMALL BUSINESS ADMINISTRATION; ISABEL GUZMAN, in her official capacity as Administrator of the Small Business Administration; JANET YELLEN, in her official capacity as Secretary of the Treasury; and the UNITED STATES OF AMERICA,

                      Defendants.

**OPINION AND ORDER**

22-CV-4973 (PMH)

---

PHILIP M. HALPERN, United States District Judge:

      Plaintiff Dante Hyndman ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, brings this action against the Small Business Administration ("SBA"); Isabel Guzman, the Administrator of the SBA; Janet Yellen, the Secretary of the Treasury; and the United States of America (collectively, "Defendants"), under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, 703, seeking review of the SBA's decision to deny him a COVID-19 Economic Injury Disaster Loan ("EIDL"), a program created by the Coronavirus Aid, Relief, and Economic Security ("CARES") Act. (Doc. 2, "Compl."). Plaintiff alleges that the SBA acted in an arbitrary and capricious manner in processing and reviewing his EIDL application for his business and seeks mandamus relief, including compelling Defendants to declare him eligible for the loan. (*Id.*).

      Defendants filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on April 7, 2023. (Doc. 29; Doc. 31; Doc. 30, "Def. Br."). Plaintiff filed opposition on May 15, 2023 (Doc. 34, "Pl. Br."), and Defendants' motion to dismiss was fully briefed with the filing of their reply memorandum of law on May 25, 2023. (Doc. 35).

      For the reasons set forth below, Defendants' motion to dismiss is GRANTED.

1

**BACKGROUND**

Plaintiff alleges that as a direct result of the COVID-19 pandemic, Plaintiff's business was "negatively impacted and suffered substantial economic injury." (Compl. ¶ 10). On or about March 14, 2020, Plaintiff updated his banking information with the IRS so as to receive stimulus payments. (*Id*. ¶ 11). On April 1, 2020, he applied for an EIDL, but on June 13, 2020, his application was "'[d]enied due to economic injury not substantiated.'" (*Id*. ¶ 12). Shortly after the denial, Plaintiff suffered COVID-19 symptoms, had to quarantine with family members, the city shut down, and he was unable to amend his 2019 tax return until July 1, 2021, at which time, he also filed his 2020 tax return. (*Id*. ¶ 13). Throughout 2020 and 2021, Plaintiff reapplied to the EIDL program 12 times, but his applications were denied. (*Id*. ¶ 14). The stated reason was that "'[t]he applicant business is not eligible because there are significant discrepancies between the information [Plaintiff] provided in [his] application and the information [the SBA] received from the IRS.'" (*Id*. ¶ 14).

Plaintiff informed the SBA that his 2019 amended return had not been processed by the IRS and to wait before ordering transcripts. (*Id*.). The SBA nonetheless ordered the transcripts which led to another denial of Plaintiff's EIDL application on August 19, 2021. (*Id*.). Plaintiff appealed the denial. (*Id*. ¶ 15). While the appeal was pending, on November 5, 2021, the IRS fully processed Plaintiff's tax return. (*Id*. ¶ 16). On December 14, 2021, "an inexperienced 24-year-old loan specialist," who was "newly out of college," denied Plaintiff's appeal because of "identified discrepancies with other applications submitted, [and] no tax transcripts for other businesses on applications submitted by Plaintiff." (*Id*. ¶ 18).

Plaintiff alleges that "[u]pon information and belief," the SBA never processed the original application. (*Id*. ¶ 19.) After the appeal was denied, Plaintiff requested to speak with a supervisor, and he was assigned a new loan officer. (*Id*. ¶ 20). He also contacted the manager of the local SBA

office, who sent an email on Plaintiff's behalf concerning the denied appeal. (*Id*. ¶ 21). On December 21, 2021, Plaintiff uploaded all the required documents to the SBA portal. (*Id*. ¶ 22). On February 9, 2022, the congressional loan specialist informed him that the legal review team had identified multiple discrepancies with his file, including tax documents that appeared to have been filed only to obtain a loan; no evidence that Plaintiff's business was operational before the disaster date; the filing of 12 applications with varying information and that seem to be for different businesses; and the use of 7 different bank accounts throughout the applications. (*Id*. ¶ 25). The review team also found Plaintiff's explanation for the duplicate applications insufficient. (*Id*.).

Plaintiff attempted to explain that all of the applications were submitted for the same business, that only one application needed to process, and that the multiple bank account information was given so that the SBA could update the bank account from the original application. (*Id*. ¶ 26). Plaintiff believes that "the SBA dragged [his] files through a fake legal review process that was kept secret until 2022." (*Id*. ¶ 29). Plaintiff's file was "flagged for fraud" with an agency's hold for "discretionary reasons." (*Id*. ¶ 31). He spent weeks going back and forth with the SBA about his file, constantly providing explanations on how his business operated, how he generated income, the filing of his tax documents, why he opened a business bank account in August 2021, and other discrepancies. (*Id*.). On March 29, 2022, the SBA lifted the hold on Plaintiff's file, and on April 1, 2022, the legal review process of the file was completed, and Plaintiff was informed that he now had to wait on the "congressional high priority team." (*Id*. ¶¶ 34-35).

On April 9, 2022, the SBA requested partial transcripts from the IRS. (*Id*. ¶ 36). Plaintiff immediately informed the SBA that the full transcripts were needed, not partials, and that he had twice submitted the full transcripts. (*Id*.). On April 11, 2022, the file was sent for final reconsideration. (*Id*. ¶ 37). Two days later, Plaintiff called to confirm that the SBA had all the


necessary documents and the "team lead" of the congressional loan specialists confirmed that everything was ready to go. (*Id*. ¶ 38). On April 28, 2022, however, the SBA denied Plaintiff's appeal, stating "'that Plaintiff will not get a second appeal due to late filing of taxes,' despite Plaintiff completing the legal review process on April 1st and rectifying that same discrepancy." (*Id*. ¶ 39). On May 5, 2022, the SBA announced that the EIDL program was ending and that all portals would go down on May 16, 2022. (*Id*. ¶ 40). Shortly after the announcement, Plaintiff called the SBA to confirm that his file was still awaiting processing by congressional high priority, and he was told yes. (*Id*. ¶ 41).

On May 11, 2022, Michael Lipari ("Lipari"), a representative from the Office of Disaster Assistance, placed the funding on hold for Plaintiff's file because of "suspected EIDL fraud." (*Id*. ¶ 42). Lipari also stated that Plaintiff had filed his tax returns "for purposes of the loan." (*Id*.). Plaintiff contacted Katherine Crane ("Crane"), a high priority specialist and Lipari's supervisor, and ask her to review the file. (*Id*. ¶ 43). Crane informed Plaintiff that Lipari worked for the legal review team. (*Id*.). Plaintiff surmised that Lipari "disregarded the consensus reached by the legal review department" and "flagged [][his] file for something that was already resolved." (*Id*.).

Plaintiff contends that no matter what happens with a file, even if all documents are provided, all discrepancies are resolved through legal review, the SBA has an internal policy to deny at any means necessary and/or to delay a file any way possible until the SBA can shut the program down. (*Id*. ¶ 44). Plaintiff also asserts that 15 U.S.C. § 9009(d)(2) "did not give the SBA the discretion to create additional 'entity eligibility criteria'" for approval of EIDL applications. (*Id*. ¶ 45).

**STANDARD OF REVIEW**

I. Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction, and Rule 12(b)(1) requires dismissal of an action 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).[1] "The party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exists." *Hettler v. Entergy Enters., Inc.*, 15 F. Supp. 3d 447, 450 (S.D.N.Y. 2014) (citing *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009)). When deciding a motion to dismiss under Rule 12(b)(1) at the pleadings stage, "the Court 'must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor.'" *Id.* (quoting *Conyers*, 558 F.3d at 143); *see also Doe v. Trump Corp.*, 385 F. Supp. 3d 265, 274 (S.D.N.Y. 2019).

II. Federal Rule of Civil Procedure 12(b)(6)

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

unlawfully." *Id*. The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (internal quotation marks omitted)). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). While "[p]*ro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal* . . . dismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-6718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir.

6

2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations . . . in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)).

Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court also has a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## **ANALYSIS**

I. <u>Federal Rule of Civil Procedure 12(b)(1): Subject-Matter Jurisdiction</u>

Defendants argue, in support of the branch of their motion brought under Rule 12(b)(1), that Plaintiff's request for injunctive and mandamus relief is barred by sovereign immunity and 15 U.S.C. § 634(b)(1). (Def. Br. at 13-18). "Issues of federal sovereign immunity implicate a court's subject-matter jurisdiction . . . and, as such, are usually threshold issues that must be decided before proceeding to the merits of a given case. *Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 415-16 (2d Cir. 2022). But "there is a distinct difference between jurisdictional questions of a statutory nature and jurisdictional questions of a constitutional nature." *Id*. at 416. Accordingly, "the question of the SBA's sovereign immunity under Section 634(b)(1), related to the issue of the availability of injunctive relief, is not a threshold question [this Court] must decide before" considering the merits, "especially . . . where, as here, the plaintiff[ ] seek[s] other forms of relief, such as . . . declaratory relief . . ." *Id*. at 416-17.

7

Because, as discussed *infra*, this Court concludes that Plaintiff's claims fail on the merits, it "decline[s] to address whether the SBA has sovereign immunity from injunctive relief under Section 634(b)(1)." *Id*. at 415.

II. <u>Federal Rule of Civil Procedure 12(b)(6): Failure to State a Claim for Relief</u>

Plaintiff's claims are brought under the APA, alleging that the SBA acted in an arbitrary and capricious manner in processing and reviewing his EIDL application for his business and seeking, *inter alia*, an order compelling Defendants to declare him eligible for the loan. (*See* Compl.). The APA does not permit a review of agency actions which are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *see Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361, 370 (2018). This exception applies "where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Weyerhaeuser*, 129 S. Ct. at 370 (citation omitted).

Under the Small Business Act, the SBA makes loans as it "*may* determine to be necessary or appropriate." 15 U.S.C. § 636(b)(2) (emphasis added). The "word 'may' clearly connotes discretion," *Biden v. Texas*, 142 S.Ct. 2528, 2541 (2022), and the allocation of lump-sum appropriations is typically considered a discretionary act, *see Lincoln v. Vigil*, 508 U.S. 182, 192 (1993) ("The allocation of funds from a lump-sum appropriation is another administrative decision traditionally regarded as committed to agency discretion. After all, the very point of a lump-sum appropriation is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way."); *see also Weyerhaeuser*, 129 S. Ct. at 370 (explaining that the "few cases in which we have applied the § 701(a)(2) exception involved agency decisions that courts have traditionally regarded as unreviewable, such as the allocation of funds from a lump-sum appropriation"); *Copake Lake Dev.*

*Corp. v. U.S. Gov't*, 490 F. Supp. 386, 389 (E.D.N.Y. 1980) ("[T]he decision concerning the granting of a loan by the SBA is one firmly committed to agency discretion, and other courts that have considered the question are uniformly in agreement on this point.").

The CARES Act, as amended, provides that the SBA "*may* use information from the Department of the Treasury to confirm that (A) an applicant is eligible to receive such a loan; or (B) the information contained in an application for such a loan is accurate." 15 U.S.C. § 9009(d)(2) (emphasis added). This amendment allowing consideration of information from the IRS took place before Plaintiff's EIDL application was denied on reconsideration and appeal in late 2021 and 2022 due to "significant discrepancies between the information [Plaintiff] provided in [his] application and the information [the SBA] received from the IRS." (*See* Compl. ¶ 14; *see also id*. ¶¶ 18, 25, 27, 31). The language in the CARES Act providing that the SBA may consider tax information to confirm applicant eligibility and the accuracy of information in a loan application, 15 U.S.C. § 9009(d)(2), provides "no meaningful standard against which to judge the agency's exercise of discretion." *Weyerhaeuser*, 129 S. Ct. at 370.

This Court agrees with the many district courts that have considered this issue of the SBA's decisions concerning EIDLs and concluded that the SBA's actions were committed to agency discretion by law and therefore unreviewable. *See, e.g., Shumaker v. Guzman*, No. 21-CV-00477, 2022 WL 2902843, at *7 (S.D. Tex. Apr. 4, 2022) (decision to increase or advance EIDL loan is "committed to agency discretion by law"); *Brennan v. United States*, No. 20-CV-00505, 2020 WL 3980001, at *9 (E.D. Ark. July 14, 2020) ("[T]he CARES Act vests the Administrator with discretion."); *LIT Ventures, LLC v. Carranza*, 457 F. Supp. 3d 906, 910 (D. Nev. 2020) ("Congress therefore granted the SBA discretion to determine what EIDLs were 'necessary and appropriate.'"); *see also Keita v. U.S. Small Bus. Admin.*, No. 07-CV-04958, 2010 WL 395980, at

9

*3 (E.D.N.Y. Feb. 3, 2010) ("Here, the Court lacks guidance to adjudge the SBA's exercise of its discretion because Keita seeks review of the individual economic judgments that comprised the SBA's decision that his loans were not 'necessary or appropriate.'"). Accordingly, Plaintiff's claims fail as a matter of law.

In any event, Plaintiff fails to plausibly allege that the SBA acted in disregard of any right or in violation of any duty imposed by the Small Business Act or the CARES Act. Plaintiff's allegations of the existence of an "internal policy" to "delay a file any way possible until SBA can shut the program down" is belied by the other allegations in his pleading that the SBA timely reviewed his multiple applications. (*Compare* Compl. ¶¶ 12, 14, 16-18, *with id*. ¶¶ 29, 44). Plaintiff also speculates that the SBA "never processed the original application" and that the SBA "didn't need other applications to be considered" (*id*. ¶¶ 19, 26); but he specifically alleges that he initially applied for EIDL in April 2020 and that this application was denied in June 2020 (*id*. ¶ 12).

Moreover, Plaintiff's allegations that the EIDL denial was in contravention of law because the SBA considered information from the IRS, and otherwise repeatedly denied his application without cause due to discrepancies between his EIDL application and the information received from the IRS, are not facially plausible. (*See id*. ¶¶ 14-45). As discussed *supra*, the SBA was statutorily permitted to review that information, including specifically for the purpose of identifying such discrepancies.

Plaintiff's contention in his opposition brief that the SBA denied his application based on a secret or unpublished regulation requiring that 2019 federal tax returns have been timely filed in 2020 is unsupported by the facts alleged in his pleading. (Pl. Br. at 6-9). Despite his 2019 tax return not being filed until July 2021, after which the SBA noted additional discrepancies, Plaintiff

specifically alleges that the SBA continued to consider his applications through at least April 2022. (*See id.* ¶¶ 14-39).

Accordingly, the Complaint fails to state a claim upon which relief can be granted.

## CONCLUSION

Based upon the foregoing, Defendants' motion to dismiss is GRANTED and Plaintiff's Complaint is dismissed with prejudice. While "[d]istrict courts should frequently provide leave to amend before dismissing a *pro se* complaint . . . leave to amend is not necessary when it would be futile." *Reed v. Friedman Mgt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). For all the reasons described herein, Plaintiff's claims are dismissed with prejudice as any amendment would be futile.

The Clerk of the Court is respectfully directed to terminate the pending motions (Doc. 29, Doc. 31) and to close this case.

SO ORDERED:

Dated: White Plains, New York
      January 22, 2024

_____
Philip M. Halpern
United States District Judge